<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DAVID BANKES,
a/k/a DAVID BANKS

              Plaintiff,

    v.

STEVEN FELICE <u>et</u> <u>al</u>.,

           Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No.  05-356 (JBS)

**OPINION**

APPEARANCES:

Mr. David Bankes #495883-543982B
South Woods State Prison
215 Burlington Road, South
Bridgeton, NJ 08302
    Plaintiff <u>Pro</u> <u>Se</u>

Thomas B. Reynolds, Esq.
REYNOLDS, DRAKE & WRIGHT
29 North Shore Road
P.O. Box 345
Absecon, NJ 08201
    Attorney for Defendants Steven Felice and Jeannie DuBois

**SIMANDLE**, District Judge:

    This matter comes before the Court upon cross-motions for

summary judgment filed by Plaintiff David Bankes ("Bankes") and

Defendants Steven Felice ("Felice") and Jeannie DuBois

("DuBois"). [Docket Item Nos. 21, 24, and 25].[1]  Bankes brings

---

    [1]  Defendants Steven Felice and Jeannie DuBois jointly filed
their motion for summary judgment but that motion has been
entered on the Court's docket twice as Docket Item Nos. 24 and

this action against Felice and DuBois under 42 U.S.C. § 1983, claiming that he suffered injuries when he was falsely arrested without probable cause and unlawfully detained pursuant to that arrest due to a defective arrest warrant executed by Felice and DuBois.  Because Bankes' allegations center on the fact that he was arrested due to a defective arrest warrant, the central issue before the Court is whether the arrest warrant in this matter violated Bankes' Constitutional rights.

This Court finds that the warrant was valid.  In preparing the complaint and warrant, Felice fully complied with New Jersey Court Rules regarding the contents of the complaint and warrant. In addition, Felice and DuBois complied with New Jersey Court Rules and New Jersey law regarding the telephonic issuance of arrest warrants in the issuance of the warrant.  Even if this Court had found the warrant defective on technical grounds, summary judgment in favor of Felice (a police officer) and DuBois (a municipal court administrator) would be appropriate as the Defendants are entitled to qualified immunity, having acted reasonably and in good faith in preparing and issuing the warrant.  Thus, because no genuine issues of material fact exist as to the validity of the arrest warrant, the Court will deny

---

25.] Felice and DuBois will be referred to collectively as the "Defendants."

2

Plaintiff's motion for summary judgment and grant Defendants Felice and DuBois' motions for summary judgment.

I.   **BACKGROUND**

   A.   **The Parties and Background**

   Plaintiff is David Bankes, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey.  Defendants are Steven Felice, a detective employed by the City of Millville Police Department and Jeannie DuBois, the City of Millville Municipal Court Administrator.  The events at issue in this case took place on February 26, 2003 when Plaintiff was questioned by police and ultimately arrested and charged with several counts of aggravated sexual assault, aggravated criminal sexual contact and endangering the welfare of a child.

   On February 26, 2003, Officer Robert Colle of the City of Millville Police Department began investigating an alleged child sexual abuse case.  The allegations of child sexual abuse had come to Officer Colle from the New Jersey Division of Youth and Family Services ("DYFS").[2]  A representative of DYFS told Officer Colle that the parent of a student at Bacon Elementary School told the school's social worker that the victim of the abuse was Holly Baker, a student at Bacon Elementary.  The parent told DFYS

---

   [2]  DFYS had learned of the allegations from a social worker at Bacon Elementary School in Millville, New Jersey.

that Holly may have been sexually assaulted by her mother's boyfriend.

DYFS interviewed Holly Baker and her sister, Monica Baker. At first, Holly denied that she was abused.  Monica, however, told DYFS that David Bankes, their mother Louis Baker's boyfriend, had inappropriately touched her on several occasions. Officer Colle then spoke with Holly Baker's friend (whose mother reported the incident to the Bacon Elementary School social worker).  The friend informed Officer Colle that Bankes had touched her in inappropriate ways.  After speaking with this friend, Officer Colle and other Millville police officers brought Holly Baker, Louis Baker and David Bankes to the Millville police station for questioning.

At the police station, Detective Felice interviewed both Holly and Bankes.[3]  After speaking with Bankes for several hours, Bankes gave Detective Felice a statement in which he (a) admitted to having a drinking problem and (b) admitted that, at times, he touched his "stepdaughters" (Holly and Monica) in an inappropriately sexual manner (specifically, on the buttocks and vagina).  Detective Felice then confirmed Bankes' statement by speaking again with Holly Baker.

---

[3]  Before Detective Felice spoke with Bankes, Felice stated that he informed Bankes why the police were interested in questioning him.  According to Detective Felice, Bankes was also read, and waived, his Miranda rights.

4

**B.**   **Bankes' Arrest and Detention**

After Bankes gave his statement, at approximately 8:00 p.m. on February 26, 2003, Bankes was arrested and charged with several counts of aggravated sexual assault, aggravated criminal sexual contact and endangering the welfare of a child.  Detective Felice then called the Honorable Diane B. Cohen, J.S.C., to have Bankes' bail set.  After Judge Cohen found probable cause to issue an arrest warrant, Detective Felice contacted DuBois, the City of Millville Municipal Court Administrator, regarding the signing of the arrest warrant.[4]  Detective Felice swore that the facts contained in the Complaint-Warrant that he was sending DuBois were true and that the facts that he had earlier relayed to Judge Cohen were true.  The Complaint-Warrant, signed by Detective Felice (indicating him as the "complainant"), was faxed to DuBois' home shortly after 9:00 p.m. The Complaint-Warrant contained a summary of the facts underlying the sexual assault and child endangerment claims being brought against Bankes.

DuBois reviewed the Complaint-Warrant, signed it (as the "person administering oath" and as "judicial officer") and faxed it back to the Millville Police Department.  Before faxing it back to the Millville Police Department, DuBois wrote on the

_____

[4]  Defendants assert (and Bankes does not dispute) that on March 15, 1999, Jeannie DuBois received permission from the Honorable Samuel G. DeSimone J.S.C. (Assignment Judge of the Superior Court) to use a home facsimile machine to handle work related contacts from the Millville and State Police.

Complaint-Warrant  "[p]robable cause found by Judge, [r]eason for warrant defendant is a danger to victim and per Court rule." (Id.)  The Complaint-Warrant also stated that "to any peace officer or other authorized person: pursuant to this warrant, you are hereby commanded to arrest the named defendant and bring that person forthwith before this court to answer this complaint." (Id.)

Upon receipt of the signed Complaint-Warrant, Bankes was brought to the Cumberland County jail along with the faxed copy of the warrant, and was detained.  On February 27, 2003, as is the practice of the Millville Police Department, the original warrant was mailed to Bankes at the Cumberland County jail.  Also on February 27, 2003, Bankes was arraigned by Millville Municipal Court Judge, the Honorable S. Kemble Salvo.

C.  **Procedural History**

On January 20, 2005, Plaintiff filed this action alleging that Plaintiff was falsely arrested without probable cause and unlawfully detained pursuant to that arrest due to the defective warrant executed by Detective Felice and DuBois.  Plaintiff seeks compensatory damages, punitive damages and his immediate release, among other relief.  On May 2, 2005, this Court dismissed certain portions of Plaintiff's claim with prejudice and certain portions without prejudice.  [Docket Item No. 9.]  Thereafter, Plaintiff filed a motion for summary judgment as to the claims and

defendants remaining after this Court's May 2, 2005 Order.
[Docket Item No. 21.]   Defendants Detective Felice and DuBois
filed cross-motions and oppositions to Bankes' motion. [Docket
Item Nos. 24 and 25.]   Bankes replied to Defendants' cross-
motion and Defendants replied to Bankes' cross-motion.  This
Court now decides the cross-motions without oral argument
pursuant to Fed. R. Civ. P. 78.

## II.  **DISCUSSION**

### A.   **Standard of Review**

A court may grant summary judgment when the materials of
record "show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life
Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the non-moving party." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only
if it might affect the outcome of the suit under the applicable
rule of law.  See id.  Disputes over irrelevant or unnecessary
facts will not preclude a grant of summary judgment.  Id.[5]  The

_____

[5] Moreover, a non-moving party must do more than rely only
"upon bare assertions, conclusory allegations or suspicions."
Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied,
474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477
U.S. at 249-50.  Thus, if the non-moving party's evidence is a
mere scintilla or is "not significantly probative," the court may

summary judgment standard does not change when, as here, the
parties have filed cross-motions for summary judgment.  <u>See</u>
<u>Appelmans v. City of Phila.</u>, 826 F.2d 214, 216 (3d Cir. 1987).[6]

    **B.**   **<u>Standard for a Section 1983 Claim for False Arrest/False
Imprisonment</u>**

      Bankes' claim is brought under 42 U.S.C. § 1983 which allows
a plaintiff to bring a claim for certain violations of his or her
constitutional rights.[7]  To state a claim for relief under §

---

grant summary judgment.  <u>Liberty Lobby</u>, 477 U.S. at 249-50;
<u>Country Floors</u>, 930 F.2d at 1061-62.

    [6]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is
> entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an
> agreement that if one is rejected the other is
> necessarily justified or that the losing party waives
> judicial consideration and determination whether
> genuine issues of material fact exist.

<u>Transportes Ferreos de Venezuela II CA v. NKK Corp.</u>, 239 F.3d
555, 560 (3d Cir. 2001) (citing <u>Rains v. Cascade Indus., Inc.</u>,
402 F.2d 241, 245 (3d Cir. 1968)).

    [7] Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress....

42 U.S.C. § 1983.

1983, a plaintiff must allege that the defendant: (1) violated a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Bankes' Section 1983 claim specifically alleges that the actions of the Detective Felice (acting as a Millville police officer) and Jeannie DuBois (acting as the municipal court administrator) led to his false arrest and an unlawful imprisonment. As such, Bankes alleges a violation of the Fourth Amendment to the United States Constitution, which provides that "[t]he right of the people to be secure in their persons...against unreasonable searches and seizures, shall not be violated."[8]

In the Third Circuit, an arrest without probable cause is a constitutional violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989); see also Albright v. Oliver, 510 U.S. 266, 274, (1994) (a § 1983 claim for false arrest may be based upon an individual's Fourth Amendment right

---

[8] A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983).

to be free from unreasonable seizures).  Moreover, in this
Circuit "where the police lack probable cause to make an arrest,
the arrestee [also] has a claim under § 1983 for false
imprisonment based on a detention pursuant to that arrest."
Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v.
Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999).[9]

### C.   **Whether the Arrest Warrant was Valid and Constitutional**

Bankes makes a number of arguments in support of his motion
for summary judgment.[10]  Ultimately, Bankes contends that the
Defendants' actions led to the issuance of an invalid warrant;
which led directly to his false arrest and false imprisonment.

---

[9]  Under New Jersey law, false arrest has been defined as
"the constraint of the person without legal justification."
Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998)
(quoting Fleming v. United Postal Service, Inc., 255 N.J. Super.
108 (N.J. Law Div. 1992)).  To state a claim for false arrest, a
plaintiff must allege two elements: (1) that there was an arrest;
and (2) that the arrest was made without probable cause.  See
Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir.
1988).

[10]  In his motion for summary judgment, Bankes states that
he "relies on his previous submissions to this Court, and
attached legal memorandum in support of this motion."  The Court
assumes that Bankes is relying on his "Pretrial Memorandum" filed
on August 1, 2005 [Docket Item No. 18] and the exhibits submitted
with a letter to the Court filed on February 28, 2005 [Docket
Item No. 5.]  While Bankes approach is unconventional, given that
he is appearing pro se and is currently incarcerated, this Court
will allow these materials to serve as Bankes' motion for summary
judgment.  Even taking these matters to be his motion, the Court
notes that Plaintiff, however, does little in the way of
developing his arguments in support of his motion and includes
only case law that is no longer good law or is inapplicable to
the present situation.

Specifically, Bankes first argues that the arrest warrant
executed by Detective Felice was invalid as the warrant was
issued by Felice and New Jersey law prohibits a law enforcement
officer from issuing a warrant.  Bankes cites the New Jersey
Supreme Court case of <u>State v. Ruotolo</u>, 52 N.J. 508 (1968), in
support of this proposition.  Next, Bankes argues that the
warrant was invalid because "Felice never appeared before a
judicial officer to swear to the Complaint. . . [and] therefore
no one found probable cause for the warrant to issue."  Third,
Bankes argues that the arrest warrant was "executed falsely"
because "the contact between [DuBois] and Defendant Felice was
via phone and fax."  Bankes cites the appellate division case of
<u>State v. Ross</u>, 189 N.J. Super. 67 (App. Div. 1983) in support of
this argument.  Finally, Bankes argues that DuBois did not have
the authority to issue a warrant via fax or give a telephonic
oath, rendering the warrant invalid.

### 1.   The contents and issuance of an arrest warrant in New Jersey

The New Jersey Court Rules (the "Rules") establish the rules
and procedures governing criminal practice in New Jersey.  The
Rules set out, among other things, the required contents of a
criminal complaint and arrest warrant and the proper procedure
for issuance of an arrest warrant.  <u>See</u> Sylvia A. Pressler,
<u>Current New Jersey Court Rules</u> 3:1 <u>et</u> <u>seq</u>. (Gann 2005).  Rule
3:2-1(a) sets out the required contents of a criminal complaint.

11

According to the Rule, a complaint must: (1) be a written
statement of the essential facts constituting the offense
charged; (2) be made "on a form approved by the Administrative
Director of the Courts;" and (3) be made by certification or oath
before a judge or other person authorized by N.J.S.A. 2B:12-21 to
take such complaints.[11]  R. 3:2-1.  Next, Rule 3:2-3 sets out the
required contents of an arrest warrant.  R. 3:2-3(a), (b).
Specifically, Rule 3:2-3 states:

> An arrest warrant shall be made on a Complaint-Warrant
> (CDR2) form.  The warrant shall contain the defendant's
> name or if that is unknown, any name or description
> that identifies the defendant with reasonable
> certainty, and shall be directed to an officer
> authorized to execute it, ordering that the defendant
> be arrested and brought before the court that issued
> the warrant.

R. 3:2-3(a).  Rule 3:2-3 also states that "the warrant shall be
signed by the judge, clerk, deputy clerk, municipal clerk,
municipal court administrator, or deputy court administrator."[12]
Id.

_____

[11]  N.J.S.A. 2B:12-21 states that:

An administrator or deputy administrator of a municipal
court, authorized by a judge of that court, may
exercise the power of the municipal court to administer
oaths for complaints filed with the municipal court and
to issue warrants and summonses.

[12]  This Rule was amended in 1995 to add municipal court
administrators and deputy court administrators to the list of
people who may sign and issue an arrest warrant.  See Pressler,
Current New Jersey Court Rules, Comment R. 3:2-3 (Gann 2005).

In addition to establishing the required contents of a criminal complaint and an arrest warrant, the Rules establish the proper procedure for issuance of an arrest warrant. R. 3:3-1. According to Rule 3:3-1(a), an arrest warrant may be issued on a complaint only if "a judge...[or] municipal court administrator [first]...finds from the complaint or an accompanying affidavit or deposition, that there is probable cause to believe that an offense was committed and that the defendant committed it and notes that finding on the warrant."[13] R. 3:3-1(a)(1); see also State v. Ruotolo, 52 N.J. 508, 515 (1968). Next, the judge or municipal court administrator must find that the issuance of a warrant -- rather than a summons -- is appropriate. R. 3:3-1(a)(1). Under the Rule:

> A summons rather than an arrest warrant shall be issued unless:
>
> > (1) the defendant is charged with...aggravated sexual assault [or] aggravated criminal..., [or]
> >
> > (2) there is reason to believe that the defendant is dangerous to self, other persons or property....

---

[13] According to the Comments to Rule 3:3-1(a), the 1995 amendments to the Rules to: (1) require that the judicial officer note the finding of probable cause on the face of the warrant or summons; and (2) expand the definition of judicial officer to include the municipal court administrator and deputy administrator. Pressler, Current New Jersey Court Rules, Comment R. 3:3-3 (Gann 2005).

13

R. 3:3-1(c)(1), (2) [emphasis added].  Finally, the Rules state
that, after an arrest on a warrant, "the person who is arrested
on that warrant shall have bail set without unnecessary delay,
and no later than 12 hours after arrest."  R. 3:4-1(b).

> ### 2.    The arrest warrant complied with the New Jersey
> ###       Court Rules and was Constitutionally valid.

This Court finds that the arrest warrant issued in this case
was valid and did not abridge Bankes' Fourth Amendment rights as
(a) both the criminal complaint and arrest warrant contained the
requisite contents set out in the Rules and (b) Defendants both
followed the proscribed procedure for issuing an arrest warrant.
See R. 3:2-1 - 3:2-3.  First, this Court finds that the
Complaint-Warrant filed in this case satisfies the requirements
established for a criminal complaint under Rule 3:2-1.  R. 3:2-
1(a).  The Complaint-Warrant contained a written statement
summarizing the offenses Bankes was charged with and the
essential facts regarding his actions towards Holly Baker (taken
from the statement Bankes made to Detective Felice earlier on the
evening of February 26, 2003.)  (Pl.'s Ex. D.)  Moreover, the
Complaint-Warrant was contained on Form CDR2, a form approved by
the Administrative Director of the Court.  (Id.)  The
certification in the Complaint-Warrant was made under oath via
telephone before DuBois (as a municipal court administrator, an
individual qualified under N.J.S.A. 2B:12-21 to administer oaths
and take complaints).

Second, the Court finds that the warrant contained all of the elements required under Rule 3:2-3(a) for an arrest warrant. The warrant was (1) made on a Complaint-Warrant (CDR2) form; (2) contained Bankes' name and address, and (3) ordered that Bankes be arrested. (Pl.'s Ex. D.)  The warrant was also signed by DuBois, a municipal court administrator (an individual specifically authorized to issue arrest warrants under the Rule.)[14]  (Id.)

Third, this Court finds that the arrest warrant was properly issued in compliance with Rule 3:3-1.  The arrest warrant was issued after DuBois, a municipal court administrator found that there was probable cause for Bankes' arrest.  R. 3:3-1(a). DuBois based her finding of probable cause on (a) an oath of Detective Felice, (b) the Complaint-Warrant, and (c) the original finding of probable cause by Judge Cohen.  As required, DuBois noted on the face of the warrant that "probable cause [was] found by Judge...."  (Pl.'s Ex. D; Pressler, Current New Jersey Court Rules, Comment R. 3:2-3.)

DuBois also correctly issued a warrant rather than a summons.  DuBois  explained her decision to issue a warrant in a written note on the face of the warrant stating "reason for

---

[14]   Both in his motion and reply papers, Bankes argues that the warrant was invalid because DuBois is not a judge.  While this is true, as a municipal court administrator, she is authorized (both under New Jersey Court Rules and by New Jersey Statute) to determine probable cause and issue an arrest warrant.

warrant...[was that Bankes was a] danger to victim and as per Court rules." (Id.; Rule 3:3-1(a).)  The Court assumes that when DuBois wrote "danger to victim," she was referring to Rule 3:3-1(a)(3) which states that a summons should be issued unless "there is reason to believe that the defendant is dangerous to self, other persons or property."  Moreover, the Court also assumes that when DuBois wrote that a warrant was issued "as per Court rules" she was referring to Rule 3:3-1(a)(1) which states that a warrant is appropriate where "the defendant is charged with...aggravated sexual assault, [or] aggravated criminal sexual contact...."  Bankes was charged with both aggravated sexual assault as well as aggravated criminal sexual contact.

Finally, the fact that the arrest warrant was issued using telephone and fax communications does not make it invalid. Although not expressly addressed by the New Jersey Court Rules in 2003 (the time of Bankes' arrest), New Jersey law did permit the use of telephonic arrest warrants.  See State v. Cymerman, 135 N.J. Super. 591, 598 (Law Div. 1978) (followed by State v. Limberti, 161 N.J. Super. 575, 580-81 (App. Div. 1978)).  In Cymerman, the court addressed the issue of whether the New Jersey Court Rules require "a face-to-face confrontation between the issuing magistrate and the affiant."  135 N.J. at 598.  The Court held that "there is no constitutional impediment to a telephonic application of the issuance of a warrant."  Id.  Rather, "[t]he

16

Fourth Amendment requires the warrants issue 'supported by oath
or affirmation,' while the requirement that the oath be taken by
the issuing magistrate in the presence of the affiant appears to
be judge-made." <u>Id.</u>  According to the court in <u>Cymerman</u> (and
adopted by the New Jersey Appellate Division in <u>Limberti</u>), "it is
the oath and not the face-to-face confrontation which is mandated
and which is at the core of the Fourth Amendment requirement
[and]...the oath administered...over the telephone was adequate
to satisfy the Fourth Amendment mandate."[15]  <u>Id.</u>  Moreover, since
DuBois appeared to have the capability and express authority to
use a facsimile machine to issue arrest warrants "after hours,"

---

[15]  In 2004, the Rules were amended so that Rule 3:2-3(b)
provides for issuance of an arrest warrant "based on
electronically communicated information provided under oath by an
applicant who is not present before the issuing judge."  (Court
Rules, Comment R. 3:2-3(b)).  Specifically, Rule 3:2-3(b) states:

> A judge may issue an arrest warrant on sworn oral
> testimony of a law enforcement applicant who is not
> physically present.  Such sworn oral testimony may be
> communicated by the applicant to the judge by
> telephone, radio or other means of electronic
> communication.

(Rule 3:2-3(b)).

In addition, Defendants point out and the Court notes that
Federal Rule of Criminal Procedure 41 specifically permits
telephone and faxed arrest warrants.  Fed. R. Crim. P.
41(d)(3)(A) ("A magistrate judge may issue a warrant based on
information communicated by telephone or other appropriate means
including facsimile transmission.")  While the Federal Rules of
Criminal Procedure do not apply to Bankes' state crimes, the rule
guides this Court regarding the constitutionality of the
telephonic arrest warrant procedure.

this Court sees no reason that the warrant should be deemed
invalid.[16]

### D.  __Detective Felice and DuBois are Entitled to Qualified Immunity__

Detective Felice and DuBois fully complied with the New
Jersey Court Rules regarding the issuance of the arrest warrant
in this matter.  However, as Defendants argue, even if Felice and
DuBois had violated the Rules, they would likely be entitled to
qualified immunity from Bankes' civil rights action.  Under the
doctrine of qualified immunity, police officers and other public
officials performing discretionary duties within the scope of
their employment are "shielded from liability for civil damages

---

[16]  In his reply papers, Bankes argues that <u>State v. Mershon</u>, in which a New Jersey Law Division court held that "[t]he law requires the affiant to be in the personal presence of the officer administering the oath," is controlling.  <u>See</u> 39 N.J. Super. 599, 603 (Law Div. 1956).  This Court concludes, however, that when the court's later decision in <u>Cymerman</u> was adopted by the New Jersey Appellate Division in <u>Limberti</u>, <u>Mershon</u> was no longer good law.  <u>See</u> <u>Limberti</u>, 161 N.J. Super. at 580-81.

Bankes also argues that, under <u>State v. Bobo</u>, in which the New Jersey Appellate Division found a warrant invalid where the complaint was not signed under oath and not in the presence of an individual authorized to issue a warrant, this Court should grant Bankes' motion.  <u>See</u> 222 N.J. Super. 30, 33 (App. Div. 1987).  This Court, however, finds this case distinctive from the present case.  Unlike the present case, the complaint in <u>Bobo</u> was signed in the presence of police officer (who was not authorized to issue a warrant under New Jersey law) and was not signed under oath.  <u>See</u> <u>id.</u>  The Court held that, because the Complaint was signed in the presence of a police officer, "it was...the law enforcement officer who took the complaint and in fact issued the warrant [and that] [t]his was in violation of defendant's constitutional rights."  <u>Id.</u> at 34.

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The privilege is more than a defense to liability; it is an immunity from suit. Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

In determining whether an officer or official is immune from suit, a court must first inquire whether "the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If a plaintiff fails to establish that a constitutional right was violated, the matter of qualified immunity is obviated and the inquiry ends. See id. If, however, a violation could be ascertained when the facts are viewed in the light most favorable to the party asserting the injury, a court must then inquire whether the right was "clearly established" at the time of the officer's allegedly unlawful conduct. Id. In making that determination, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. Put differently, "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."[17] Id. Moreover, when the alleged constitutional

---

[17] The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v.

violation relates to an arrest made pursuant to a warrant, the officer will "lose the shield of immunity" only "where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable'...." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Even if this Court found that the arrest warrant was invalid due to the Defendants' use of telephone and facsimile communications in the issuance of the warrant and that Bankes' constitutional rights were violated, the Defendants would be entitled to qualified immunity. Given the uncertainty of the state of the law at the time of Bankes' arrest regarding the use of telephonic and other electronic communication in the issuance of arrest warrants, this Court could not conclude that the law put Felice or DuBois on notice that their conduct would be "clearly unlawful." Rather, the Court finds that both Felice and DuBois were acting under a reasonable and good faith belief that they were authorized to obtain an arrest warrant in this manner. Further, with respect to Detective Felice, the Court could not conclude that the arrest warrant here was so lacking in "indicia of probable cause" to make Detective Felice's belief in the existence of the arrest warrant "unreasonable." Instead, it is clear that Detective Felice had a good faith belief, as expressed

Bryant, 502 U.S. 224, 229 (1991).

by his signature on the Complaint-Warrant in which he stated
"upon oath..that to the best of his knowledge" the statements
made in the Complaint were true, that probable cause for Bankes'
arrest existed.  Thus, even if the arrest warrant was technically
defective and Bankes' constitutional rights were violated, DuBois
and Detective Felice both did not violate any clearly-established
constitutional right and therefore would be entitled to qualified
immunity.  As such summary judgment would be appropriate in their
favor.

## III. <u>CONCLUSION</u>

For the reasons set forth above, this Court will deny
Plaintiff David Bankes' motion for summary judgment and grant
Defendants Detective Felice and DuBois' motions for summary
judgment.  The Court finds that the arrest warrant issued in this
matter was valid and (1) it was prepared by Detective Banks in
compliance with the New Jersey Court Rules and New Jersey law
(establishing the rules for the proper contents of a Complaint
and Arrest Warrant) and (2) both Detective Felice and DuBois
followed the proper procedure for the issuance of the arrest
warrant.  <u>See</u> <u>R</u>. 3:2-1 - 3:3-1(a), (b).  As such, the Court finds
that, as a matter of law, Bankes' constitutional rights were not
violated.  Indeed, even if the Court were to find that the arrest
warrant was defective due to a technicality, both Detective

Felice and DuBois would be entitled to qualified immunity.  The appropriate Order will be entered.


**June 26, 2006**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     United States District Judge

22